IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HARRY J. WILLIBY,                    )        No. C 02-3628 JSW (PR)
                                     )
            Petitioner,              )        **ORDER DENYING**
                                     )        **PETITION FOR WRIT OF**
      vs.                            )        **HABEAS CORPUS**
                                     )
TOM L. CAREY, Warden,                )
                                     )
            Respondent.              )
_____)

## INTRODUCTION

Petitioner, a prisoner of the State of California incarcerated at California State Prison-Solano, filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. On March 17, 2003, the Court ordered Respondent to show cause why a writ should not issue (docket no. 6). Respondent filed an answer on July 24, 2003 (docket no. 14). Petitioner filed a traverse on September 30, 2003 (docket no. 23). For the reasons stated below, the petition is denied on the merits.

## PROCEDURAL BACKGROUND

On September 28 2000, Petitioner was convicted by a jury of misdemeanor battery and assault with force likely to produce great bodily injury. (Clerk Tr. 402-03.) On November 21, 2000, the trial court sentenced Petitioner to six years in prison. (Clerk Tr. 493.) Petitioner appealed his conviction and filed a petition for writ of habeas corpus. The California Court of Appeal, First Appellate District, affirmed the conviction and denied the habeas petition. (Answer, Exh. 3) (*People v. Williby*, Case. No. A093186, slip op. (Cal. Ct. App., April 25, 2002)). Petitioner filed a petition for review of both the appeal and the habeas corpus petition in the California Supreme Court, which denied the petition for review on July 10, 2002. (Answer,

Exh. 5.)

**FACTUAL BACKGROUND**

The facts underlying the charged offenses, as found by the Court of Appeal of the State of California, First Appellate District, Division Two, are summarized as follows:

[Petitioner] was convicted of assaulting fellow student Kimberly Oparaocha at a student store at the University of California (UC) at Berkeley. Kimberly testified that, during 1999, she and Williby both were student workers at the Institute of Urban and Regional Development (IURD) at UC. On June 23, 1999, Kimberly, who worked in the reception area, heard a loud argument between Williby and other workers in the office. The next day, Williby came to the office and had a loud argument with the officer manager, Barbara Hadenfelt. As he walked out of the office, Williby glared at Kimberly, called her a b[****] and accused her of "ringleading all these f[******] broads" in the office to be against him and cause him to lose his job. Kimberly was shocked and upset by Williby's outburst because she had thought of him as a quiet person who rarely spoke when he came into the office. The incident was reported to the UC campus police.

After that incident, Kimberly saw Williby about five more times on or around the UC campus and the BART train station. No exchange of words took place, but Kimberly said she saw Williby scowling at her and attempting to make eye contact. One day in November 1999, Kimberly saw Williby standing on the other side of the platform. Williby began to scream at her and walk toward her. [Petitioner] yelled, "Yeah b[****]. You're going to get yours." At that point, Williby's train arrived, and he got on and left the station.

Kimberly did not see Williby again until the afternoon of May 8, 2000, at the campus student store. That day, as she walked through the student store, she saw Williby in the hallway. Seconds later, he lunged at her and began to beat her repeatedly on the head with his fists. Kimberly crouched on the ground and raised her hands over her head to try to protect herself as Williby beat her. Kimberly did not provoke the attack or strike Williby back. Eventually, Williby stopped beating her, and Kimberly remembers getting into an ambulance. Her head was throbbing in pain, and she was crying incoherently. She was taken to Alta Bates Hospital and diagnosed with a mild concussion.

Several people witnessed the attack. Tamara Hoffman heard a scream and saw an African-American woman being hit on the head by an African-American man while she was crouched on the floor. The man then went to a mailbox and thereafter left the building. Meagan Parks heard screaming and yelling and turned to see an African-American man chasing and punching an African-American woman in the head. As the woman screamed and crumpled down on the floor, the man continued to beat her with his fists. He eventually stopped and walked away. Crystal Hoang heard a woman's voice yelling at someone to stop when she turned and saw an African-American man holding an African-American woman down on the floor while the man punched her at least 10 times in the head. When he stopped beating her, the man stared at the witnesses and then turned and walked away.

Dr. Mezia Azinge-Okonkwo testified that she examined Kimberly on May 9, 2000, and determined that she was suffering from two bumps or hematoma's to her head. Kimberly complained of dizziness and nausea, which were signs of a possible mild concussion.

John Barrientos, an officer with the UC Police Department (UCPD), testified that Williby came to UCPD on the evening of May 8, 2000, and voluntarily wrote out and signed a statement outlining his version of the events. Williby's statement claimed that Kimberly attempted to physically assault him by bumping him with her body. He pushed

her away, she began screaming at him, and he proceeded to his mailbox and then left the building.

Williby, who represented himself, testified on his own behalf at trial. He met Kimberly while working as a student researcher at IURD. He disliked Kimberly because he felt she was encouraging the other people to harass him. After the June 23, 2999, incident in which he was asked not to return to the IURD offices, Williby saw Kimberly at the BART station. He denied threatening her at the BART station. On May 8, 2000, Williby was on his way to his mailbox in the student store when he saw Kimberly. She made direct eye contact with him, "straightened up with her shoulders and kind of tried to lean into" him. Williby pushed her away at the shoulder with his hand. He said she leaned into him again, so he pushed her away again. Williby said she never fell to the floor, and he denied hitting or punching her. According to Williby, Kimberly never yelled or screamed. After he shoved her away, he went to his mailbox, and then left. Williby did not go to the police station immediately because he was not aware of being accused of assault and battery.

(April 25, 2002 slip op. at 2-4.)

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Id.* As summarized by the Ninth Circuit: "A

state court's decision can involve an 'unreasonable application' of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000) (citing *Williams*, 529 U.S. at 405-07), *overruled in part on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

In deciding whether the state court's decision is contrary to, or an unreasonable application of clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision.  *LaJoie v. Thompson,* 217 F.3d 663, 669 n.7 (9th Cir. 2000).  Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, there is a somewhat different standard of review under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  In such a case, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable.  *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Greene v. Lambert*, 288 F.3d 1081, 1088 (9th Cir. 2002); *Bailey v. Newland*, 263 F.3d 1022, 1028 (9th Cir. 2001); *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).  If the state court only considered state law, the federal court must ask whether state law, as explained by the state court, is "contrary to" clearly established governing federal law.  *See Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir.

4

1    2001).

2                              **DISCUSSION**

3    **I.    Instructional Errors to the Jury**

4          In his first and second claims, Petitioner argues that jury instruction errors denied him

5    due process.  In his first claim, Petitioner contends that the trial court failed to sua sponte

6    instruct the jury adequately on self-defense.  In his second claim, Petitioner contends that the

7    trial court erroneously instructed the jury on flight.  Petitioner is not entitled to federal habeas

8    relief on either claim.

9          **A.    Legal Standard**

10         A challenge to a jury instruction solely as an error under state law does not state a claim

11   cognizable in federal habeas corpus proceedings.  *See Estelle v. McGuire*, 502 U.S. 62, 71-72

12   (1991).  To obtain federal collateral relief for errors in the jury charge, a petitioner must show

13   that the ailing instruction by itself so infected the entire trial that the resulting conviction

14   violates due process.  *See Estelle*, 502 U.S. at 72; *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).

15   *See also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must be established not

16   merely that the instruction is undesirable, erroneous or even "universally condemned," but that

17   it violated some [constitutional right].'").  The instruction may not be judged in artificial

18   isolation, but must be considered in the context of the instructions as a whole and the trial

19   record.  *See Estelle*, 502 U.S. at 72.  In other words, the court must evaluate jury instructions in

20   the context of the overall charge to the jury as a component of the entire trial process.  *See, e.g.,*

21   *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam) (no reasonable likelihood that jury

22   misled by single contrary instruction on imperfect self-defense defining "imminent peril" where

23   three other instructions correctly stated the law); *United States v. Frady*, 456 U.S. 152, 169

24   (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

25         A trial court's refusal to give an instruction does not alone raise a ground cognizable in a

26   federal habeas corpus proceeding.  *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988).

27

28

                                      5

The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. *See id.* Whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury. *See Duckett v. Godinez*, 67 F.3d 734, 745 (9th Cir. 1995). After all, due process does not require that an instruction be given unless the evidence supports it. *See Hopper v. Evans*, 456 U.S. 605, 611 (1982); *Miller v. Stagner*, 757 F.2d 988, 993 (9th Cir.), *amended,* 768 F.2d 1090 (9th Cir. 1985), *cert. denied*, 475 U.S. 1048 (1986).

The omission of an instruction is less likely to be prejudicial than a misstatement of the law. *See Walker v. Endell*, 850 F.2d 470, 475-76 (9th Cir. 1987) (citing *Henderson*, 431 U.S. at 155). Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'" *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson*, 431 U.S. at 155). The significance of the omission of such an instruction may be evaluated by comparison with the instructions that were given. *Murtishaw v. Woodford*, 255 F.3d 926, 971 (9th Cir. 2001) (quoting *Henderson*, 431 U.S. at 156).

In reviewing a challenged instruction, the inquiry is not how reasonable jurors could or would have understood the instruction as a whole; rather, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. *Estelle*, 502 U.S. at 72 & n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). *See, e.g., Ficklin v. Hatcher*, 177 F.3d 1147, 1150-51 (9th Cir. 1999) ("harmless error" when certain that jury did not rely on constitutionally infirm instruction). However, the determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred. *See Calderon v. Coleman*, 525 U.S. 141, 146 (1998). If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict, *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), before granting relief in habeas proceedings. *See Calderon*, 525 U.S. at 146-47; *Payton v. Woodford*, 346 F.3d 1204,

1215-16 (9th Cir. 2003), *rev'd on other grounds by Brown v. Payton*, 125 S.Ct. 1432 (2005).

**B.    Analysis**

    **1.    Self-Defense**

The trial court instructed the jury on self-defense pursuant to CALJIC No. 5.30, which states in part that "[i]t is lawful for a person who is being assaulted to defend himself from attack if, as a reasonable person, he has grounds for believing and does believe that *bodily injury* is about to be inflicted upon him."  (April 25, 2002 slip op. at 4 (emphasis in original)). *See* Rep. Tr. 1012-14.  Petitioner argues that the trial court should have instructed the jury of his right to defend himself against unlawful use of force even in the absence of the threat of great bodily injury or death.  (Pet. 8.)

The California Court of Appeal is the highest state court to address the merits of this claim in a reasoned decision.  Therefore, this Court looks to the analysis of the Court of Appeal in evaluating Petitioner's claim.  *LaJoie,* 217 F.3d at 669 n.7.  The Court of Appeal considered and rejected this claim under state law, finding that the trial court did not have a sua sponte duty to instruct on the right of self-defense based on the particular facts asserted by Williby.  (April 25, 2002 slip op. at 5.)

The Court of Appeal further found that even if the trial court had a sua sponte duty of instruction, any error in failing to instruct was clearly harmless.  *Id.*  The Court of Appeal held that the "testimony of the three disinterested eyewitnesses to the beating and the evidence of the victim's injuries make it inconceivable that the giving of the modified instruction would have led to a more favorable result, since the defense would allow only such force as was necessary to prevent the threatened offensive touching.  The weight of the evidence showed Williby's use of force far exceeded that allowable as defense to a threatened battery."  *Id.*  (Citations omitted.)

A criminal defendant is entitled to an instruction on his theory of the case provided that it is supported by law and has some foundation in the evidence.  *Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 1999); *United States v. Del Muro*, 87 F.3d 1078, 1081 (9th Cir. 1996).  However, a

7

court may reject a defendant's proposed instruction on his theory of the case if other instructions, in their entirety, adequately cover that defense theory. *Id.* Here, the trial court gave a standard jury instruction on self-defense. The Court finds that no error occurred in the trial court's failure to instruct the jury on Petitioner's theory of self-defense because there was no "reasonable likelihood" that the jury applied the standard given instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & n.4.

Furthermore, Petitioner has not shown that the alleged error, "in the whole context of the particular case, had a substantial and injurious effect or influence on the jury's verdict." *Calderon*, 525 U.S. at 146 (citing *Brecht*, 507 U.S. at 637). The California Court of Appeal correctly determined that even if the trial court erred by failing to instruct, any such error was harmless in light of the evidence showing that Petitioner's use of force was far more excessive than necessary to prevent the threatened battery, namely, the victim trying to lean into him with her shoulder. (Rep. Tr. 845-46.)

Accordingly, Petitioner's claim for habeas relief on this ground is denied.

### 2.  <u>Flight</u>

Over Petitioner's objection, the trial court instructed the jury pursuant to CALJIC No. 2.52, as follows: "The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding whether a defendant is guilty or not guilty. The weight to which this circumstance is entitled is a matter for you to decide." (April 25, 2002 slip op. at 6.) *See* Rep. Tr. 1009. In his second claim for federal habeas relief, Petitioner argues that there was no factual basis for the flight instruction because he did not know that he was wanted for felony battery until four days afterward when he was arrested. He also argues that he did not run from the crime scene, but was seen calmly walking out of the building. (Pet. 8-47.)

The Court of Appeal rejected Petitioner's claim, finding that the trial court did not err by

giving the flight instruction.  The Court of Appeal found that the trial court "stated that it believed the instruction was appropriate because one inference of the evidence was that Kimberly wound up on the ground and was crying loudly enough to attract the attention of three witnesses.  Since Williby left the scene immediately without waiting around to 'confront whatever was going to happen as a result of that,' the jurors could reasonably draw the inference that his flight was consciousness of guilt.  Also the court noted that the instruction provided a limitation on the use of the alleged flight evidence which presumably was for Williby's benefit."  (April 25, 2002 slip op. at 6.)   The Court of Appeal held that it was for the jury to decide the significance attributable to Petitioner's conduct.  *Id.* at 7.

The Court of Appeal further held that even if the trial court erred, any error in giving the flight instruction was harmless.  *Id.*  The Court of Appeal found that the instruction assumes neither guilt nor flight.  The Court of Appeal also found that, in light of the evidence, it was not reasonably probable that the jury would have reached a result more favorable to Petitioner had it not been given the flight instruction.  *Id.*

On a federal habeas petition, the Court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution.  *Estelle*, 502 U.S. at 72 & n.4.  In the instant case, the instruction at issue is an inference instruction.  The first step in analyzing whether an instruction that creates an evidentiary inference violates due process by relieving the State of its burden of proving each element of a crime beyond a reasonable doubt is to determine whether the instruction creates a mandatory presumption or a permissive inference.  *United States v. Warren*, 25 F.3d 890, 897 (9th Cir. 1994) (analyzing whether jury instruction shifted burden of proof by determining whether inference permissive or mandatory).  "A mandatory presumption tells the jury that it must presume that an element of a crime has been proven if the government proves certain predicate facts."  *Id.*  By contrast, "a permissive inference instruction allows, but does not require, a jury to infer a specified conclusion if the government proves certain predicate facts."

*Id*.  An instruction that creates a mandatory presumption violates due process because it "directly foreclose[s] independent jury consideration of whether the facts proved establish[ ] certain elements of [the charged offense] ... and relieve[s] the State of its burden of ... proving by evidence every essential element of [the] crime beyond a reasonable doubt." *Carella v. California*, 491 U.S. 263, 265-66 (1989).

An instruction such as CALJIC 2.52, that merely creates a permissive inference does not shift the burden of proof, but it nonetheless violates due process unless it can be said "'with substantial assurance' that the inferred fact is 'more likely than not to flow from the proved fact on which it is made to depend.'" *County Court of Ulster County v. Allen*, 442 U.S. 140, 167 & n. 28 (1979) (quoting *Leary v. United States*, 395 U.S. 6, 36 (1969)).  Here, the Court is satisfied that there is a "substantial assurance" that the inference that flight indicated consciousness of guilt more likely than not flowed from the facts here.

As is the rule in federal criminal cases in this circuit, "[e]vidence of flight is generally admissible as evidence of consciousness of guilt and of guilt itself." *United States v. Harris*, 792 F.2d 866, 869 (9th Cir. 1986).  Its probative value depends upon inferences drawn: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *United States v. Felix-Gutierrez*, 940 F.2d 1200, 1207 (9th Cir. 1991), *cert. denied*, 508 U.S. 906 (1993) (citations omitted).

Moreover, it does not appear that the timing of the flight makes a difference in analyzing the propriety of introducing such evidence at trial.  "The evidence of flight after a crime has been committed, whether from the scene or at a later time, is admissible since such evidence may tend to prove the defendant's consciousness of guilt." *Shorter v. United States*, 412 F.2d 428, 430 (9th Cir. 1969).  Although these decisions are based on federal evidentiary rules, they are instructive of the legitimate bases for drawing an inference of consciousness of guilt or guilt

in admitting evidence of flight[1]

The facts of Petitioner's case support the Court's of Appeal's determination that the trial court did not err in charging the jury with CALJIC No. 2.52. Petitioner left the scene immediately after beating the victim as she lay on the ground, briefly checking his mailbox before leaving the building. The fact that he was unaware that he was being sought for the crime charged does not render the jury instruction erroneous. *See Harris*, 792 F.2d at 869.

Moreover, the instruction itself is explicit in allowing the jury to use flight only "if proved." That is, while CALJIC No. 2.52 allows a jury to consider flight in light of other "proved facts," the instruction clearly allows the jury to first conclude that there was no flight or, if it found there was flight, to accord little or no significance to that fact. The other proven facts in the case, such as eyewitness testimony that Petitioner punched the victim in the head and stared at the witnesses before walking away, support the inference that Petitioner's flight was evidence of his consciousness of guilt. This Court finds that it can be said "'with substantial assurance' that the inferred fact[s]'more likely than not to flow from the proved fact[s] on which [they]...depend.'" *Ulster County*, 442 U.S. at 167 & n. 28 (quoting *Leary v. United States*, 395 U.S. 6, 36 (1969)). Because the jury was explicitly instructed that evidence of flight is not sufficient in itself to establish guilt, Petitioner cannot show that the jury applied the instruction in a way that violated the Constitution. *Estelle*, 502 U.S. at 72.

Furthermore, Petitioner does not rely on any authority from the Supreme Court which supports his claim that the instruction was impermissible under the facts of his case. The Court finds that the state court's determination that the flight instruction was appropriate was not contrary to, or an unreasonable interpretation of, established Supreme Court precedent.

---

[1]  California law appears to be in accord. "The focus of [CALJIC 2.52] is on the defendant and the question of whether there was flight and whether it is reasonable to infer consciousness of guilt from such flight. The instruction goes on to limit the jury's use of the evidence in that it advises the jury that flight alone cannot support a finding of guilt. Thus CALJIC 2.52 serves the dual purpose of permitting an inference of guilt, but at the same time provides the defendant with some protection against misuse of such evidence." *People v. Henderson*, 2 Cal. Rptr. 3d 32, 35-36 (2003); *People v. Han*, 93 Cal. Rptr.2d 139; *People v. Batey*, 261 Cal. Rptr. 674 (1989).

11

1    Accordingly, the claim is denied.

2    **II.    Prosecutorial Misconduct**

3           In his third, fourth, and tenth claims for writ of habeas corpus, Petitioner contends that

4    the State knowingly withheld exculpatory evidence and suborned perjury.  These are essentially

5    the same claim, that prosecutorial misconduct resulted in his conviction by false evidence

6    concerning the nature of the victim's injuries.  In his third claim, Petitioner argues that the State

7    withheld medical evidence that the victim did not suffer any injuries and falsely alleged that the

8    victim suffered loss of consciousness.  In his fourth claim, Petitioner further argues that

9    Detective Dylan Windham committed perjury and that the deputy district attorneys knowingly

10   suborned the perjury, submitting Det. Windham's false testimony at the preliminary hearing.  In

11   his tenth claim, Petitioner reiterates his assertions that the deputy district attorneys withheld

12   exculpatory medical evidence.  (Pet. 8-51 to 8-57.)  For the reasons stated below, Petitioner is

13   not entitled to federal habeas relief on these claims.

14

15   **A.    Legal Standard**

16          Prosecutorial misconduct is cognizable in federal habeas corpus.  The appropriate

17   standard of review is the narrow one of due process and not the broad exercise of supervisory

18   power.  *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  A defendant's due process rights

19   are violated when a prosecutor's misconduct renders a trial "fundamentally unfair."  *See id.*;

20   *Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of

21   alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the

22   prosecutor").

23          There are three situations in which a violation of the prosecutor's duty to disclose

24   information may occur: (1) where the prosecutor uses testimony which he knows or should

25   know is perjured or false; (2) where defendant requests specific evidence which is not provided;

26   and (3) where the defense makes a general request or no request at all and prosecutor fails to

27   provide information which might create a reasonable doubt.  *See United States v. Agurs*, 427

28

U.S. 97, 103-07 (1976).  Here, Petitioner claims that the State withheld exculpatory evidence and knowingly used false testimony.

### 1.   Exculpatory Evidence

If a defendant so requests, the government has an obligation to surrender favorable evidence that is "material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  *See Agurs*, 427 U.S. at 112 (constitutional standard of materiality imposes a higher burden on the defendant than the normal harmless error standard).  "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985) (plurality opinion); *accord id.* at 685 (White, J., concurring).

If the defense does not request such information, the prosecutor must nonetheless turn over any evidence that might create a reasonable doubt that otherwise would not exist.  *See United States v. Agurs*, 427 U.S. at 112-13 (omission of such evidence must be evaluated in the context of the whole case and violation of due process occurs when a defendant is denied a fair trial; thus, even minor violations may meet the reasonable doubt requirement in a close case). However, where the government discloses all the information necessary for the defense to discover the alleged *Brady* material on its own, the government is not guilty of suppressing evidence favorable to the defendant.  *See United States v. Bracy*, 67 F.3d 1421, 1428-29 (9th Cir. 1995).

### 2.   Perjury

When a prosecutor obtains a conviction by the use of testimony which he knows or should know is perjured, it has been consistently held that such conviction must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury.  *See id.* at 103.  *See, e.g.*, *Brown v. Borg*, 951 F.2d 1011, 1015 (9th Cir. 1991) (prejudice to right to fair trial more palpable when prosecutor not only withheld exculpatory evidence but

knowingly introduced and argued false evidence).  The same result obtains when the prosecutor, although not soliciting false evidence, allows it to go uncorrected when it appears.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

To prevail on a claim that the State knowingly presented false evidence, Petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material. *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003) (citing *Napue*, 360 U.S. at 269-71).  "In assessing materiality under *Napue*, we determine whether there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury; if so, then the conviction must be set aside.  Under this materiality standard, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (citations omitted).   If the claim meets the materiality standard under *Agurs/Napue*, then no separate analysis of harmless error under *Brecht* is required.  *Hayes*, 399 F.3d at 984 (citing *Brecht v. Abrahamson*, 507 U.S. 619 (1993)).

Prosecutors will not be held accountable for discrepancies in testimony where there is no evidence from which to infer prosecutorial misconduct and the fairness of the trial was not materially affected.  *See United States v. Zuno-Arce*, 44 F.3d 1420, 1423 (9th Cir.) (no evidence of prosecutorial misconduct where discrepancies in testimony could as easily flow from errors in recollection as from lies), *cert. denied*, 516 U.S. 945 (1995).  Petitioner must establish factual basis for attributing knowledge that the testimony was perjured to the government.  *See Morales v. Woodford,* 388 F.3d 1159, 1179 (9th Cir. 2004).

**B.    Analysis**

In denying these claims alleging prosecutorial misconduct, the Court of Appeal found as follows: "The arrest warrant and complaint stated that the victim suffered a fractured skull and

subdural hemotoma, which a subsequent CT scan ruled out.  The CT scan was performed on

May 15, 2000, a week after the incident.  Williby complains that neither his counsel nor the

prosecutor corrected the complaint to reflect that these injuries had not been suffered.  At the

preliminary hearing, however, the court found probable cause only as to the injury of loss of

consciousness.  Loss of consciousness is also the only injury alleged in the information, which

charged battery resulting in infliction of serious bodily injury.  The jury's verdict of simple

battery rejected even the allegation of loss of consciousness.  None of these claims rises to the

level of fundamental jurisdictional or constitutional error."  (April 25, 2002 slip op. at 8.)

In the absence of a reasoned decision by a state court disposing of Petitioner's claims of

prosecutorial misconduct, the Court must conduct an independent review of the record to

ascertain whether the state court decision was objectively unreasonable.  *Himes v. Thompson*,

336 F.3d 848, 853 (9th Cir. 2003).

### 1.    Exculpatory Evidence

The CT scan of the victim's head conducted on May 15, 2000 indicated "no evidence of

a fracture or intracranial hemorrage or other acute abnormality." (Pet., Exh. 2 at 3.)  According

to Petitioner, the results of the CT scan refuted all injuries alleged in the May 12, 2000

complaint, namely a fractured skull and subdural hemotoma.  (Pet. 8-52 and Exh. 3 at 2.)  At the

May 17, 2000 preliminary hearing, Deputy District Attorney Diem informed the Superior Court

that she had discussed the CT scan with defense counsel and indicated that "there is not a

fracture to her skull as a result of this assault and there are other issues including the subdural

hemotoma." (May 17, 2000 Rep. Tr. 2-3, 9.)  The Superior Court granted the State's motion to

amend the complaint to remove the allegation of a fractured skull from count one.  *Id.*

Petitioner alleges, however, that Ms. Diem withheld significant part of the victim's CT scan

concerning the absence of a hemotoma, and deliberately misled the court into denying a

reduction in bail, or release on his own recognizance, and permitting amendment of the

complaint. (Pet. 8-20, 8-51 to 8-57.)   The Superior Court noted that the "allegations here are

very serious.  And as Ms. Diem pointed out the incident appears to be entirely unprovoked and I am too concerned about something similar happening if the defendant were at liberty."  (May 17, 2000 Rep. Tr. 6.)  The court also considered Petitioner's prior violent felony when setting bail.  *Id.* at 5-6.  *See* Jan. 21, 2004 Further Decl. Of Counsel, Exh. A (June 8, 2000 Rep. Tr. at 20 ("I set bail on the basis that the prior felony was a violent felony, Mr. Williby, and not on the basis of when it occurred.")).

On May 25, 2000, the Superior Court granted Petitioner's motion to represent himself. (May 25, 2000 Rep. Tr. 13.)   Upon withdrawing from the case, defense counsel returned discovery to Ms. Diem, who presented Petitioner with a redacted version in court.  *Id.* at 16-17. Petitioner contends that this was when he first discovered that Ms. Diem and his former attorney withheld evidence from himself and the court, namely, medical documents showing that the victim did not suffer any of the injuries with which he had been charged.  (Pet. 8-55.)

On June 6, 2000, Petitioner filed a motion to dismiss and brought to the court's attention that the latest medical report indicated that there was no evidence of a skull fracture or subdural hematoma.  (June 6, 2000 Rep. Tr. 2, 9-10; Pet., Exh. 11.)  At a proceeding on June 8, 2000, Petitioner had an opportunity to argue further the grounds for dismissal before the Superior Court, which granted amendment of the complaint to delete references to "fractured skull, subdural hematoma" and to include "loss of consciousness."   (Jan. 21, 2004 Further Decl. Of Counsel, Exh. A (June 8, 2000 Rep. Tr. 16-18.))

This Court finds that the prosecution timely provided the documents at issue to Petitioner and did not suppress exculpatory evidence.  Discovery of relevant medical records was produced first to defense counsel, then to Petitioner when the court granted his motion for self-representation.  *See Bracy*, 67 F.3d at 1428-29.  Petitioner was not prejudiced as to his bail setting, which was based on his prior conviction and the unprovoked nature of the incident. Even after the allegations of a fractured skull and hematoma were deleted from the complaint, the Superior Court did not reduce or change Petitioner's bail.  *See* July 11, 2000 Rep. Tr. 2.

16

Furthermore, as the Court of Appeal found, Petitioner was convicted of simple battery, demonstrating that the jury rejected even the allegation of loss of consciousness as grounds for infliction of serious bodily injury.  (April 25, 2002 slip op. at 8.)  Even if misconduct took place, there is no reasonable probability that the result of the proceeding would have been different. *Bagley*, 473 U.S. at 682.  The state court's denial of Petitioner's claims that the State withheld exculpatory evidence was not contrary to, or an unreasonable interpretation of, established Supreme Court precedent.  Petitioner's third and tenth claims are therefore denied.

### 2.    Perjury

The Superior Court conducted a preliminary examination on June 21, 2000, where Det. Windham testified as to his investigation of the alleged assault and battery and the victim's injuries.  Det. Windham testified that in an interview on May 15, 2000, the victim told him that Petitioner hit her on the head, and that she lost consciousness, lost control of her bladder, and was not aware of how the assault ended.  (Clerk. Tr. 72.)  Petitioner cross-examined Det. Windham, who admitted that the victim's written statement of May 8, 2000 to Officer Barrientos, did not mention becoming knocked unconscious.  *Id.* at 79-80.  Petitioner contends that Det. Windham perjured himself by testifying that he did not interview the victim until May 15, 2000, when in fact  Det. Windham spoke to the victim on three prior occasions by telephone, as documented in his supplemental reports.  *See* Clerk Tr. 67-68; Pet. 8-6 and Exhs. 17, 18.  Petitioner contends that the supplemental reports do not mention the victim's loss of consciousness, and that Det. Windham misled the court into believing that the victim's statements to him on May 15, 2000 were spontaneous declarations.  (Pet. 8-7.)  Petitioner also contends that Det. Windham was aware of the May 8, 2000 emergency room report which noted that the victim "denies any loss of consciousness," yet testified to the contrary.  (Pet. 8-13 and Exh. 1.)

Petitioner fails to demonstrate that Det. Windham's testimony was actually false.  *United*

17

*States v. Zuno-Arce*, 339 F.3d at 889.  Det. Windham's May 16, 2000 report states that his interview of the victim on May 15, 2000 "was the first opportunity I had to interview her in person." (Pet., Exh. 15.)  Furthermore, Petitioner cannot show that Det. Windham's allegedly false testimony about the victim's loss of consciousness was material, because the jury did not accept the allegation of injury to the victim.  *Id.*  Petitioner fails to establish a claim that the state knowingly used false testimony.  The state court's denial of Petitioner's perjury claim was not contrary to, or an unreasonable interpretation of, established Supreme Court precedent.  Petitioner's fourth claim is therefore denied.

**III.   Lack of Probable Cause to Support Arrest Warrant**

   In his fifth claim, Petitioner contends that Sgt. Corey White of the University of California Police Department ("UCPD") applied for and obtained a warrant for Petitioner's arrest based on false allegations about the victim's injuries, Petitioner's criminal history, and complaints against Petitioner filed with the UCPD.  In state court proceedings, Petitioner brought his Fourth Amendment challenge to the arrest warrant in a motion to suppress at both the June 21, 2000 preliminary hearing and pre-trial proceedings.  Both motions were denied. (Clerk Tr. 104, 312.)  Petitioner also challenges the state court's denial of his motion to suppress, denying that he was afforded a fair opportunity to litigate his Fourth Amendment claim.  (Traverse 46-55.)  Petitioner is precluded from raising these Fourth Amendment challenges on federal habeas review.

   *Stone v. Powell*, 428 U.S. 465, 481-82, 494 (1976), bars federal habeas review of Fourth Amendment claims unless the state did not provide an opportunity for full and fair litigation of those claims.   Even if the state courts' determination of the Fourth Amendment issues is improper, it will not be remedied in federal habeas corpus actions so long as the petitioner was provided a full and fair opportunity to litigate the issue. *See  Locks v. Sumner*, 703 F.2d 403, 408 (9th Cir.), *cert. denied*, 464 U.S. 933 (1983).  *Stone v. Powell* requires only the initial opportunity for a fair hearing.  Such an opportunity for a fair hearing forecloses this Court's

inquiry upon habeas petition into the trial court's subsequent course of action, including whether or not the trial court made any express findings of fact.  *See Caldwell v. Cupp*, 781 F.2d 714, 715 (9th Cir. 1986).  Here, Petitioner had an opportunity for full and fair litigation of his Fourth Amendment claims, and is barred from bring them on his petition for writ of federal habeas corpus.  Therefore, this claim is dismissed.

## IV.   **Denial of Ancillary Services and Interference with Defense**

In his sixth and eighth claims, Petitioner claims that he was hindered in his ability to prepare an adequate defense.  In his sixth claim, Petitioner contends that the Superior Court granted his motion for appointment of an investigator, but no investigator was ever appointed by the state court.  (Clerk Tr. 8-12; June 12, 2000 Rep. Tr. 10.)  He also claims that he arranged for his own investigator, who was denied access to the jail.  (Clerk Tr. 97-98.)  In his eighth claim, Petitioner contends that the Alameda County Sheriff's Department interfered with his ability to prepare an adequate defense by preventing him from contacting witnesses and placing him in disciplinary isolation one week prior to the start of trial, denying him access to the law library and telephone during this period, as well as denying him use of the housing unit typewriter.  (Pet. 8-34 to 8-40 and Exhs. 30- 32.)  Although the allegations of the state's interference with Petitioner's right to defend himself are serious, neither of these claims merits federal habeas relief.

### A.   **Legal Standard**

"The Sixth Amendment does not provide merely that a defense shall be made for the accused, but grants to the accused personally the right to make his defense.  It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.  Although not stated in the Amendment in so many words, the right to self-representation - to make one's own defense personally - is thus necessarily implied by the structure of the Amendment.'"  *Faretta v. California*, 422 U.S. 806, 819 (1975).

The *Faretta* right has been construed by the Ninth Circuit to encompass certain corollary rights. "*Faretta* holds that the rights guaranteed by the sixth amendment are personal to the accused. 'The rights to notice, confrontation, and compulsory process' mean, at a minimum, that time to prepare and some access to materials and witnesses are fundamental to a meaningful right of representation. . . . An incarcerated defendant may not meaningfully exercise his right to represent himself without access to law books, witnesses, or other tools to prepare a defense. We are mindful that this right is not unlimited. Security considerations and avoidance of abuse by opportunistic or vacillating defendants may require special adjustments." *Milton v. Morris*, 767 F.2d 1443, 1446 (9th Cir. 1985); *see also United States v. Sarno*, 73 F.3d 1470, 1491 (9th Cir. 1995), *cert. denied*, 518 U.S. 1020, and 519 U.S. 859 (1997) (Sixth Amendment right of access for *Faretta* defendant to prepare a defense "is not unlimited, but must be balanced against the legitimate security needs or resource constraints of the prison").

In *Milton*, the trial court had granted defendant's timely and reasonable requests for access to phone calls but jail authorities isolated him from the means to communicate with the outside world (*e.g.*, they did not let him have a telephone book so he could find an investigator, once prevented him from contacting his runner, and greatly limited his phone usage). The state materially impeded the use of the minimal tools for defense preparation which the trial court tried to ensure. And the state offered no justification for the impediments. Thus, for reasons wholly beyond his control, the defendant had no opportunity to prepare his defense. *See Milton*, 767 F.2d at 1445. The Ninth Circuit rejected the notion that this state of affairs complied with *Faretta*. "We do not believe that a defendant who exercises his right, under *Faretta*, to conduct his own defense must subject himself to the possibility that he will have, through circumstances wholly beyond his control, no opportunity to prepare that defense. The right guaranteed by the fourteenth and sixth amendments to reject a lawyer and represent oneself is premised upon the right of the defendant to make a defense. 'The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his

20

1   defense.'" *Milton*, 767 F.2d at 1445 (quoting *Faretta*, 422 U.S. at 819).

2       **B.    Analysis**

3       The California Court of Appeal denied claims six and eight for failure to state a prima

4   facie case for relief.  (April 25, 2000 slip op. at 8.)  In the absence of a reasoned decision by a

5   state court, the Court must conduct an independent review of the record to ascertain whether the

6   state court denial of these claims was objectively unreasonable.  *Himes*, 336 F.3d at 853.

7       **1.    Trial Court**

8       In preliminary proceedings, the Superior Court granted Petitioner's request for an

9   investigator.  *See* Clerk Tr. 8-12; June 12, 2000 Rep. Tr. 10.  At the June 21, 2000 preliminary

10  hearing, Petitioner told the court that his investigator "was not allowed into the facility out in

11  Dublin.  There was supposed to be information that was Fed Exed to me to the court that he did

12  go out and obtain for me."  (Clerk Tr. 97-98.)  The court was not aware of any such package

13  from the investigator.  *Id.* at 98.  On July 28, 2000, the court issued an order giving Petitioner

14  "all rights and privileges of a court appointed investigator."  *Id.* at 176.

15      At a pre-trial hearing on August 22, 2000, the trial court asked Petitioner if he had an

16  investigator working with him.  Petitioner responded as follows:

17
18  MR. WILLIBY:        Well, I had an investigator working with me on the case.  He was
19                      hospitalized on Friday.  And I anticipate that he will probably be in
                        the hospital throughout the duration of the proceedings.
20
    THE COURT:          Who is it?
21
    MR. WILLIBY:        It was an individual name [sic] Jerry Miller.  And he -- he suffered a
22                      heart attack actually.  So I don't intend on having him any further.  I
                        -- I can contact this witness without him.
23

24  (August 22, 2000 Rep. Tr. 18.)

25      Here, the trial court specifically addressed the assistance of an investigator, and

26  Petitioner knowingly waived any further services of his investigator.  Petitioner's response to

27  the trial court indicates that he availed himself of some assistance by the investigator,

28  undermining his claim that he was denied the assistance of an investigator.  Petitioner has not

21

shown that the trial court denied him his Sixth Amendment right to self-representation under *Faretta*. The state court's denial of his claim for habeas relief was not contrary to, or an unreasonable interpretation of, established Supreme Court precedent. Petitioner's sixth claim is therefore denied.

### 2. Sheriff's Department

Petitioner's allegations against the Alameda County Sheriff's Department in Claim Eight are troubling, but do not demonstrate a denial of his Sixth Amendment right to self-representation. An incarcerated pro se defendant does not have an absolute right of access to resources to prepare a defense; a detainee's right to represent himself and prepare a defense is balanced by security needs or resource constraints at the prison. *See Milton*, 767 F.2d at 1446; *Sarno*, 73 F.3d at 1491.

Petitioner claims that he was placed on disciplinary isolation from September 5 to September 11, 2000, the first day of trial. (Pet. 8-37.) During this time he was denied access to the law library and telephone. Petitioner contends that he was placed in an isolation cell after a verbal confrontation with a Sheriff's Deputy after he and another deputy conducted a search of Petitioner's personal property, including his legal paperwork. (Pet., 8-35 and Exh. 30.) The deputy's preliminary report indicates that "Williby's actions violate the safety and security of the facility. His action also places Deputies at risk." (Pet., Exh. 30.) Petitioner filed a grievance against the deputies, which was denied. *Id.*, Exhs. 31, 32.

Although Petitioner was denied access to the telephone and law library during the week before his trial, he was placed on isolation for disciplinary reasons which were further investigated on his grievance against the deputies. The investigating sergeant found that Petitioner was belligerent, agitated and difficult to deal with while the deputies performed their search. *Id.*, Exh. 32. This case is distinguishable from *Milton*, where the state offered "no justification, such as cost or security exigencies, for what occurred." 767 F.3d at 1445. Petitioner has not demonstrated a violation of his Sixth Amendment right to self-representation,

22

and therefore no basis for federal habeas relief.

Petitioner also claims he was denied time in the law library if the assigned officer was absent, or during a power shut-down to conserve energy at the prison.  Petitioner does not state specific facts to demonstrate how his defense preparations were impaired by these circumstances.  *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).  The state's cost-saving measures, balanced against the general allegations that Petitioner's access to the law library and ability to prepare a defense were, do not form the basis for federal habeas relief.  *See Milton*, 767 F.3d at 1445; *Sarno*, 73 F.3d at 1491.

The state court's denial of Petitioner's claim that the Sheriff's Department interfered with his ability to prepare a defense was not contrary to, or an unreasonable interpretation of, established Supreme Court precedent.  Petitioner's eighth claim is therefore denied.

## V.   Denial of Motion to Dismiss

In his seventh claim, Petitioner argues that the trial court erroneously denied his motion to dismiss the information, pursuant to section 995 of the California Penal Code.  *See* Clerk Tr. 25-36.  Petitioner based the motion to dismiss on the ground that there was lack of probable cause to support the allegations, arguing that the victim did not state that she lost consciousness, but that Det. Windham gave hearsay testimony at the preliminary examination to the effect that she did.  Petitioner argues that the court's error was based on false information about the victim's injuries as alleged in his third, fourth, and tenth claims concerning prosecutorial misconduct, discussed in Section II, *supra*, and his eleventh claim concerning ineffective assistance of counsel, discussed in Section VII, *infra*.  This claim also lacks merit.

### A.   Legal Standard

On a claim of trial error, a habeas petitioner is not entitled to relief unless the trial error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  In other words, state prisoners seeking federal habeas relief may obtain plenary review

23

of constitutional claims of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice." *Id.* (citation omitted).

**B.    Analysis**

The Court of Appeal considered and rejected Petitioner's claim that the trial court committed prejudicial error by denying his motion to dismiss the information.  The Court of Appeal found that the lower court "found probable cause only as to the injury of loss of consciousness," and that "[t]he jury's verdict of simple battery rejected even the allegation of loss of consciousness."  (April 25, 2002 slip op. at 8.)  Petitioner, therefore, was not prejudiced by the allegation of loss of consciousness, as it had no" substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.  The state court's denial of Petitioner's judicial error claim was not contrary to, or an unreasonable interpretation of, established Supreme Court precedent.  Petitioner's seventh claim is therefore denied.

**VI.    Judicial Partiality**

In his ninth claim, Petitioner contends that biased conduct and statements by the trial judge, Hon. Kenneth R. Kingsbury, denied Petitioner of his right to due process.  For the reasons discussed below, this claim does not warrant federal habeas relief.

**A.    Legal Standard**

The Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge.  *See In re Murchison*, 349 U.S. 133, 136 (1955).  For Petitioner to succeed on a judicial bias claim, he "must overcome a presumption of honesty and integrity in those serving as adjudicators; and [he] must convince [the Court] that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).   Federal habeas relief is therefore limited to those instances where there is proof of actual bias, or of a possible temptation so severe that one might presume

24

an actual, substantial incentive to be biased.  *See Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1380 (7th Cir. 1994) (en banc), *cert. denied*, 514 U.S. 1037 (1995).

**B.    Analysis**

The Court of Appeal denied Petitioner's claim of judicial partiality for failure to state a prima facie case for relief, either as too conclusory, moot, or not cognizable.  (April 25, 2002 slip op. at 8.)   In the absence of a reasoned decision by a state court, the Court must conduct an independent review of the record to ascertain whether the state court denial of this claim was objectively unreasonable.  *Himes*, 336 F.3d at 853.

Petitioner claims that the trial judge erroneously denied Petitioner's motion to suppress evidence; suggested at pretrial proceedings, off the record, that Petitioner plead guilty and vouched for Deputy District Attorney Stuart Hing's integrity as an "honorable man"; conducted ex parte discussions with Mr. Hing about whether certain evidence would be used at trial; commented to a prosecution witness that "I realize it is difficult to have to sit here and be questioned by him," during a recess from Petitioner's cross-examination; permitted Mr. Hing to counsel the victim during a recess from Petitioner's cross-examination; yelled at Petitioner and interrupted Petitioner's cross-examination of Sergeant White; excluded evidence to rebut Mr. Hing's contention during the trial that Petitioner was paranoid and delusional; gave erroneous jury instructions;[2] and erroneously denied his motion to strike his prior conviction at sentencing. (Pet. 8-41 to 8-50.)

None of these allegations of judicial misconduct rise to the level of depriving Petitioner of a fair trial.  Petitioner has not demonstrated that "the record discloses actual bias," nor does the record leave the impression "that the trial judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy or partiality." *United States v. Parker*, 241 F.3d 1114, 1119 (9th Cir. 2001).  For example, the trial judge's alleged remarks about Mr. Hing's

---

[2]    Petitioner's challenge to the trial court's jury instructions is discussed at Section I, *supra*.

25

integrity were made during a pretrial conference at which the State's plea offer was discussed. The record does not indicate, nor does Petitioner allege, that the trial judge made such commending remarks about the prosecutor to the jury. Similarly, the trial judge's alleged ex parte remarks to Mr. Hing and to the prosecution witness, which are not supported by the record but which Petitioner claims to have overheard while being held in a stairwell, do not demonstrate "such a high degree of favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). A judge's expressions of impatience, dissatisfaction, annoyance, and even anger are insufficient to establish bias or partiality. *Id.*

Concerning Petitioner's allegations that the trial judge interfered with Petitioner's cross-examination of Sgt. Corey White, it is generally appropriate for a trial judge to take part where necessary to clarify testimony and assist the jury in understanding the evidence. *United States v. Laurins*, 857 F.2d 529, 537 (9th Cir. 1988), *cert. denied*, 492 U.S. 906 (1989). It is also generally appropriate for a trial judge to participate in the examination of witnesses for the purpose of clarifying the evidence, confining counsel to evidentiary rulings, controlling the orderly presentation of the evidence, and preventing undue repetition of testimony. *United States v. Morgan*, 376 F.3d 1002, 1008 (9th Cir. 2004). Upon a review of the record, this Court finds that the trial court did not make inappropriate comments or project bias to the jury during Petitioner's cross-examination of Sgt. White. The trial court interjected for the purposes of clarifying Petitioner's questions, *see* Rep. Tr. 306, 310, 339, 388; establishing foundation, *see id.* at 321-22, 374; avoiding confusion or mischaracterization about the evidence presented, *see id.* at 370, 375, 391; and limiting the questioning to relevant testimony, *see id.* at 395, 397, 401. The record does not support a finding of judicial bias here.

As for the trial judge's rulings on Petitioner's motions, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *Liteky v. United States*, 510 U.S. 540, 555 (1994). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in

the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* Petitioner has not demonstrated how the trial court's rulings on his motion to suppress[3] or his motion to strike prior conviction establish bias or partiality.

The state court's denial of Petitioner's judicial misconduct claim was not contrary to, or an unreasonable interpretation of, established Supreme Court precedent. Petitioner's ninth claim is therefore denied.

## VII.   Ineffective Assistance of Counsel During Pretrial Proceedings

In his eleventh claim for relief, Petitioner contends that he was denied effective assistance of counsel during pretrial proceedings by his attorney's failure to deal with the issue of the victim's injuries. (Pet. 8-58 to 8-65.) Petitioner bases this claim on his contention that the victim did not suffer injuries, as similarly argued in Petitioner's third, fourth, seventh and tenth claims. *See* Sections II and V, *supra.* As explained below, this claim of ineffective assistance of counsel does not warrant federal habeas relief.

### A.   Legal Standard

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance, of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.* The right to effective assistance counsel applies to the performance of both retained and appointed counsel without distinction. *See Cuyler v. Sullivan*, 446 U.S. 335, 344-45 (1980).

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner

---

[3]      As discussed in Section III, *supra,* Petitioner's Fourth Amendment challenge is not subject to federal habeas review.

must establish two things.  First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

### B.   Analysis

Petitioner was represented by counsel from the May 15, 2000 arraignment until May 25, 2000, when Petitioner filed and was granted his motion for self-representation.  (Pet. 8-58; May 25, 2000 Rep. Tr. 11-18.)  Petitioner claims that his attorney failed to inform the court that the available medical records refuted the allegations that the victim suffered a fractured skull or subdural hematoma as alleged in the complaint.  The Court of Appeal denied this claim on the ground that Petitioner was not prejudiced by his pretrial attorney's failure to correct the complaint earlier, because at the June 21, 2000 preliminary hearing, the court found probable cause only as to the injury of loss of consciousness.  (April 25, 2002 slip op. at 8.)  Furthermore, the jury did not accept even the allegation of loss of consciousness to support a finding of battery with serious bodily injury, convicting Petitioner instead of simple battery. *Id.*

Petitioner further alleges that he was prejudiced by his former attorney's ineffective assistance because Petitioner was detained in custody because counsel allowed false information about the victim's injuries to go unchecked.  (Pet. 8-61 to 8-64.)  The Superior Court made clear, however, that it considered Petitioner's prior violent felony as well as the unprovoked nature of the current alleged offense when setting bail, and did not reduce bail even after the allegations of the fractured skull and hematoma were removed from the complaint. *See* Section II.B.1 at 16-17, *supra*.  Thus, even assuming that his attorney's performance was deficient, Petitioner has not shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466

U.S. at 694.

The state court's denial of Petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable interpretation of, established Supreme Court precedent. Petitioner's eleventh claim is therefore denied.

## VIII.   **Actual Innocence**

Petitioner also states factual innocence as grounds for writ of habeas corpus, claiming that the State submitted false evidence and testimony to convict Petitioner of battery and assault. (Pet. 6; Traverse 81-85.)  Such a "claim" is not cognizable in a federal habeas action. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  *Herrera* made it clear that there can be no habeas relief based solely on a petitioner's actual innocence of the crime. *See Coley v. Gonzalez*, 55 F.3d 1385, 1387 (9th Cir. 1995) (although actual innocence is not itself a claim, it can be a gateway through which a habeas petitioner may pass to have his otherwise procedurally barred constitutional claim considered on the merits). *See Herrera*, 506 U.S. at 404.  Petitioner's allegation that he is factually innocent because the victim suffered no injury provides no independent basis for federal habeas relief.  Petitioner's independent claim of factual innocence is therefore dismissed.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The Clerk shall enter judgment for Respondent and close the file.

IT IS SO ORDERED.

DATED: September 20, 2005

JEFFREY S. WHITE
United States District Judge